**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

BENITO VASQUEZ,                       :
             Plaintiff,             :
                           :     CIVIL ACTION NO.
     v.                      :     3-03-cv-1285 (JCH)
                           :
                           :
CLAIRE'S ACCESSORIES, INC.,    :
            Defendant.        :     SEPTEMBER 28, 2005

**RULING  RE: DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT [DKT. NO. 23] and**
**MOTION TO STRIKE [DKT. NO. 30]**

The plaintiff, Benito Vasquez, filed this civil action on July 25, 2003, against

defendant Claire's Accessories, Inc. (referred to herein as "Claire's").  Vasquez

complains that Claire's "wrongfully terminated" his employment (Count One); his

termination was a breach of the implied covenant of good faith and fair dealing (Count

Two); his termination constituted gender-based discrimination in violation of the

Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a) et seq.

("CFEPA") (Count Three); and his termination constituted unlawful retaliation in

violation of CFEPA (Count Four).

On September 4, 2003, Claire's moved to dismiss Counts One and Two, which

motion was granted, and filed an Answer in which it denied Vasquez's remaining

claims.  Claire's now moves for summary judgment on Counts Three and Four. For the

reasons that follow, Claire's motion for summary judgment on Counts Three and Four is

hereby GRANTED.

1

I.      **MOTION TO STRIKE [Dkt. No. 30]**

Claire's has moved to strike portions of two Affidavits which Vasquez has submitted in support of his opposition to the Motion for Summary Judgment.  For the reasons set forth below, the Motion to Strike is granted in part and denied in part.

Paragraphs 14 and 18 of Vasquez's Affidavit are stricken in part, the former to the extent it contains hearsay ("concerning Rapp") and the latter pursuant to F.R.E. 408.  Paragraphs 10 and 11 are stricken in part, as to what Corbo caused to happen, on the ground that Vasquez does not have first-hand knowledge.  Paragraph 4 is stricken in part as to "concerning" Rapp.  Paragraphs 6 and 15 are stricken. Paragraphs 20 and 21 are not stricken.  Paragraph 22 is not stricken; it is supported by Exhibit E.

With regard to the Affidavit of Mandarino, paragraph 5 is stricken as conclusory or without foundation.  Paragraph 10 is stricken in part with regard to "no action" or "ignore his complaints" for lack of foundation.  Paragraph 11 is stricken in part as to whose friends the "guys" were.  Paragraph 13 is stricken in part as to hearsay (what Vasquez said or would have done), and lack of foundation (what Rapp would do). Paragraph 14 is stricken as irrelevant and without foundation.  Paragraphs 9 and 12 are not stricken.

II.     **FACTS**

On January 23, 2002, Vasquez applied for employment at Claire's, a woman's accessory store, located at the Stamford Town Center Mall.  See Ex. A-1, attached to

Ex. A;[1] <u>see also</u> Pl. Dep. Tr. Ex. B.  In his Application, Vasquez agreed to the following: "I understand and agree that if hired, my employment is at will.  I also understand that if I am hired, my employment if for no definite period of time.  I may terminate my employment at any time and I may be dismissed at any time without prior notice . . . ." <u>See</u> Ex. A-1.  On or about March 19, 2002, Vasquez acknowledged receipt of the Store/Employee Handbook.  <u>See</u> Ex. A-2.  In his Acknowledgment, Vasquez represented:  "I understand that I am expected to read and understand the information in it and agree to abide by the policies during my employment." <u>See id.</u>  Vasquez read this when he received it and signed for it.  <u>See</u> Pl. Dep. Tr. at 24.

On April 1, 2002, Claire's, through its District Sales Manager, Kristine Rapp, hired Vasquez as the manager of store # 6060, located in the Stamford Town Mall. <u>See</u> Ex. A-3.  Upon being hired, Vasquez confirmed that he received the Handbook and other documents and represented:  "I acknowledge that it is my responsibility to read and understand these documents and adhere to their contents." <u>See id</u>.  Vasquez also affirmed:  "I fully understand that these documents are not an employment contract, and I am considered an at will employee." <u>See id.</u>  Vasquez understood that his employment was for no definite period of duration and was terminable at will.  <u>See</u> Pl. Dep. Tr. at 22.

The Handbook received by Vasquez provides the following guidelines on work rules and regulations:

---

[1] References to Exhibits A - (No.) ("Ex. A -") are to the attachments to defendants' Memorandum in Support of its Motion for Summary Judgment.  (Dkt. No. 23-1).

> Every organization requires certain policies and procedures that
> ensure the orderly conduct of business.  The following guidelines will
> help you understand how we operate and what is expected of you.  If
> you have any questions on a policy or work rule, please ask your
> supervisor.  You are expected to know and abide by the following
> policies and any others communicated to you by management.
> Failure to follow work rules and guidelines can result in corrective
> action, which may include termination if the violation is serious or if a
> violation is repeated.

See Ex. A-4 at 5.  Vasquez read the entire Handbook at or shortly after his receipt of it.

See Pl. Dep. Tr. at 35-36.  The Handbook also provides the following policy guidelines

on admission to the store:

> All associates, including supervisors must enter and exit through the
> front door during normal business hours.  At no time should any non-
> Claire's associate be in the backroom or in the store after closing or
> before opening the store.  If this happens, corrective action up to and
> including termination will occur.

See Ex. A-4 at 8.  The Handbook also contains a section entitled "SERIOUS

INFRACTIONS WHICH MAY RESULT IN IMMEDIATE TERMINATION."  See id. at 17-

18.  One of the serious infractions warranting immediate termination is "[u]nauthorized

visitors in the store or backroom before opening, during your scheduled shift or after

closing."  See id. at 18.

The Handbook also contains a section entitled:  "EQUAL EMPLOYMENT

OPPORTUNITY," which provides:

> Claire's is an equal opportunity employer.  This means that selection
> and placement of an individual are based on the qualifications of that
> individual for the particular job opening.  Under no circumstances will
> veteran/national guard status, race, religion, color, sex, age, sexual
> orientation, national origin, marital status or disability be a factor in
> an employment or promotion decision.  In addition, we fully observe
> all applicable State and Federal Equal Employment laws.
> We do not tolerate any form fo harassment, including sexual
> harassment, of associates at the workplace or in a work-related

4

> situation.  Unwelcome sexual advances or request of sexual favors
> which are made the basis for an employment decision, or which
> create an offensive work environment, constitute sexual harassment.
> If you observe any conduct which appears to violate these policies,
> immediately inform the Corporate Employee Relations Department at
> (800) 934-5500.

See id. at 4.  Vasquez understood the Handbook policies when he read it.  See Pl. Dep.
Tr. at 36-37.  Further, he understood the reason why Claire's had a policy prohibiting
non-Claire's associates in the back room or store after closing or before opening of the
store.  See id. at 38-39.

In his employment with Claire's, Vasquez also received the Inventory and Loss
Prevention Resource Manual and the Loss Prevention Manual.  See Pl. Tr. at 75-77.
The Loss Prevention Manual mandates that friends and relatives must wait for
employees outside the store.  See Ex. A-5, at 15.  The Inventory and Loss Prevention
Resource Manual mandates that only Claire's associates are permitted in the store
before and/or after normal business hours, that during non-business hours family
and/or friends of employees are not permitted in the store, and that violation of this
policy will result in disciplinary action up to and including termination.  See Ex. A-6.
Vasquez understood this policy during his employment.  See Pl. Dep. Tr. at 78-79.
Vasquez has never seen any writing that allows for any exception to the policy
prohibiting non-working individuals in the store after closing.  See id. at 91-92.

Claire's strictly enforces its policy prohibiting anyone other than regularly
scheduled employees in the store after business hours.  See Ex. A at ¶¶ 16, 27.  Prior
to Vasquez's hiring, nearly fifty former employees at Claire's violated Claire's policy
prohibiting anyone other than regularly scheduled employees in the store during non-

business hours and were discharged for violation of that policy.  See Ex. A-8 (copy of the foregoing employees' termination documentation).  All were discharged from employment for committing the same violation of allowing a non-employee in the store during non-business hours. See id.  All were female in gender.  See id.

On or about June 8, Vasquez invited a non-working individual into the Claire's store after closing hours.  See Pl. Dep. Tr. at 40, 51.  Vasquez does not dispute this fact. See id.  Vasquez alone made the decision to bring a non-working person into the Claire's store after closing hours and, by doing so, to knowingly violate company policy. See id. at 67.  Vasquez could have called mall security or police, prior to making the decision to bring a non-working person into the Claire's store after closing hours, but did not. See id. at 68-69.  Furthermore, Vasquez did not tell anyone in the human resource department at Claire's about why he engaged in that prohibited conduct until after he had been informed of the decision to terminate his employment.  See Pl. Dep. Tr. at 51-52.

On or about June 10, 2002, Vasquez reported to the human resource department at Claire's that he and a former Claire's manager, Tina Corbo, were experiencing difficulties with each other.[2]  See Employee Relations Hotline notes (Ex. A-10).  Corbo was not an employee of Claire's at the time of the reported difficulties. See id.  The difficulties reported by Vasquez were that Corbo interfered with the operation of the store by socializing with his staff.  See id.  In response, Rapp told Corbo to stay out of the Claire's store supervised by Vasquez.  See Rapp. Dep. Tr. at

---

[2]  Vasquez states that he made numerous unanswered complaints to Rapp concerning Corbo.  Plaintiff's Rule 56a(2) Statement at Ex. 1, ¶ 12.

109-110 (Ex. C).

On or about June 13, 2002, Rapp asked Vasquez in person whether he had indeed permitted non-employees in the store after hours; Vasquez admitted that he did. See Pl. Dep. Tr. at 101-102; 104; 106; see also Rapp Dep. Tr. at 114; 125. Rapp promptly reported Vasquez's admitted violation of company policy to Employee Relations. See id. Berlenda Hubbard, Director, Employee Relations, confirmed with Vasquez that he had violated the employment policy and then authorized Rapp to terminate Vasquez's employment. See Hubbard Affidavit (Ex. A) at ¶¶ 22, 23. On or about June 14, 2002, Rapp told plaintiff that his employment was terminated for having permitted non-employees in the store after hours. See Ex. A-11 (Separation Personal Action Notice). The reason for termination stated on Vasquez's Separation Personal Action Notice is "having friends in the store after store hours." See id.

On or about June 17, 2002, Claire's received a customer complaint alleging that, on June 11, 2002, Vasquez refused to allow a customer to return earrings that she bought in the store. See Ex. A-10. According to the complaint, an argument ensued between Vasquez and the customer, after which Vasquez and a friend (a non-employee) followed the customer into another store, the Gap. See id. Vasquez contacted Mall Security and confronted the customer in the Gap. See id. When the customer left the mall and walked into the parking lot, Vasquez and his friend followed her and, in the parking lot, threw a roll of quarters at the customer. See id. The customer was fearful that Vasquez might come after her at home. See id. Pursuant to Claire's policy, such conduct toward a customer, alone, would have been cause for immediate termination. See Hubbard Affidavit (Ex. A), at ¶ 28; Ex. A-4, at 17-18.

7

The Stamford Town Center Claire's store visibly displays posters concerning Minimum Wage, Worker's Compensation, Unemployment, Equal Employment Opportunities, Sexual Harassment, Wage and Hour Laws and OSHA.  See Pl. Dep. Tr. at 93-94.  Claire's also had in place and communicated to Vasquez, and the rest of its employees, a sexual harassment policy.  See Ex. A-4 at 4; Ex. A-9; Ex. A-12; Ex. A-13. As a store manager, not only did Vasquez know of the means by which to report any perceived sexual harassment or other illegal discrimination, but he was also responsible for implementing the policy and ensuring that all associates knew he understood it. See Pl. Dep. Tr. at 109-110; 120-121; 150-151; Ex. A-9; Ex. A-12; Ex. A-13.  Claire's also has a comprehensive and thorough discrimination policy in place.  See Ex. A-9. Prior to his June 14, 2002 employment termination, Vasquez had not communicated to anyone at the Employee Relations Department that he was a victim of discrimination. See Ex. A-10; Pl. Dep. Tr. at 149-50.  No one communicated anything to Vasquez during his employment at Claire's that reasonably suggested to him that his employment termination was motivated because of his gender.  See Pl. Dep. Tr. at 87. When Vasquez met with Rapp and admitted to letting non-working persons in the store after hours, Vasquez never raised any issue about gender. See id. at 107.  Vasquez never made a complaint of gender discrimination or harassment prior to his June 14, 2002 employment termination.  See id. at 149-150.

III.    **DISCUSSION**

A.    **Motion for Summary Judgment Standard of Review**

A moving party is entitled to summary judgment "if the pleadings, depositions,

8

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c). A motion for summary judgment may not be granted unless the court determines

that there is no general issue of material fact to be tried and that the facts as to which

there is no such issue warrant judgment for the moving party as a matter of law.

Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 36 (2d Cir. 1994). See, e.g., Fed.

R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The burden of showing that no genuine materially factual dispute exists rests on the

party seeking summary judgment. Id. See, e.g., Adickes v. S.H. Kress & Co., 389 U.S.

144, 157 (1970). In assessing the record to determine whether there is a genuine issue

as to any material fact, the court is required to resolve all ambiguities and draw all

factual inferences in favor of the party against whom summary judgment is sought. Id.

See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Thus, the

inferences to be drawn from the underlying facts revealed in materials such as

affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light

most favorable to the party opposing the motion. Id.

On a motion for summary judgment, a court "cannot try issues of fact; it can only

determine whether there are issues to be tried." Id. (quoting Donahue v. Windsor Locks

Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987)). Any "genuine dispute"

requires further examination by the trier of fact, and thus the threshold inquiry then is

"whether there are any factual issues that properly can be resolved only by a finder of

fact because they may be resolved in favor of either party." Liberty Lobby, 477 U.S. at

250.

9

Disputed facts are "material" for the purpose of summary judgment if a dispute over those facts will affect the outcome of the case.  Liberty Lobby, 477 U.S. at 248. "Substantive law will identify which facts are material."  Id.  A complete failure of proof regarding an essential element of a claim renders all other facts immaterial and permits entry of summary judgment for non-claimant.  See, e.g., Gottlieb v. County of Orange, 84 F.3d 511, 518-520 (2d Cir. 1996) (summary judgment appropriate if undisputed facts show absence of sufficient proof regarding single element on which non-movant bears burden of proof).  A court that is ruling on summary judgment may not resolve factual disputes or make credibility determinations.  See Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346, 348 (S.D.N.Y. 1993) (court cannot resolve genuinely disputed facts in deciding summary judgment, but may determine whether factual disputes exists).  In determining whether a factual dispute warranting trial exists, the court must view the record in the case and the summary judgment submissions in the light most favorable to the non-movant.  Liberty Lobby, 477 U.S. at 255.  However, a plaintiff must assert more than conclusory statements, conjecture, or speculation to defeat summary judgment.  Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 370 n.3 (2d Cir. 2003) (citing Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)).  An "opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."  Id.

**B.    Summary Judgment and Employment Discrimination**

CFEPA claims are analyzed in the same manner as Title VII employment discrimination claims.  Arnold v. Yale New Haven Hosp., 213 F.Supp.2d 142, 151 (D.

Conn. 2002).  Title VII forbids an employer from intentionally discriminating against an employee because of that employee's "race, color, religion, sex, or national origin." Bickerstaff v. Vassar College, 196 F.3d 435, 445 (2d Cir. 1999) (quoting 42 U.S.C. § 2000e-2(a) (West 1997)).  In an employment discrimination case, the plaintiff has the burden at the outset of "proving by the preponderance of the evidence a prima facie case of discrimination."  Chambers, 43 F.3d at 36 (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981)).  See also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  In order to establish a prima facie case of discriminatory discharge, the plaintiff must show (1) that he belongs to a protected class; (2) that he was performing his duties satisfactorily; (3) that he was discharged; and (4) that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class.  Id.  The burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the prima facie stage is "de minimis."  Dister v. Continental Group, Inc., 859 F.2d 1108, 1115 (2d Cir. 1988).

Once a plaintiff has established a prima facie case, the burden of production shifts to the employer to rebut this presumption by articulating a legitimate, non-discriminatory reason for its actions.  Vassar College, 196 F.3d at 446.  To meet its burden of production, the defendant need only offer such an explanation for the employment decision.  Id.  The ultimate burden of production always remains on the plaintiff.  Id.  If the defendant proffers a legitimate, non-discriminatory reason for a challenged employment action, "the presumption raised by the prima facie case is

rebutted, and drops from the case." Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)).  At this point, the plaintiff then has the burden of proving that the proffered reason is merely a pretext for discrimination.  Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2d Cir. 1997).

In assessing the inferences that may be drawn from the circumstances surrounding a termination of employment, the alleged victim of discrimination may rely on circumstantial evidence to show a prima facie inference of discriminatory intent. Chambers, 43 F.3d at 36.  Circumstances contributing to a permissible inference of discriminatory intent may include the employer's criticism of the plaintiff's performance in ethnically degrading terms, see, e.g., Lopez v. S.B. Thomas, 831 F.2d 1184, 1188 (2d Cir. 1987); or its invidious comments about others in the employee's protected group, see, e.g., Ostrowski v. Atlantic Mutual Insurance Companies, 986 F.2d 171, 182 (2d Cir. 1992); or the more favorable treatment of employees not in the protected group, Chambers, 43 F.2d at 37; or the sequence of events leading to the plaintiff's discharge, see, e.g., Ostrowski, 968 F.2d at 183; or the timing of the discharge, see, e.g., Dister, 859 F.2d at 1114.

**C.    Vasquez's Prima Facie Case**

**1.    Claire's claim that Vasquez cannot prove the second prong of the prima facie case that he was qualified for the position or performing his duties satisfactorily**

Claire's claims that Vasquez cannot meet his prima facie burden because he cannot prove the second prong of the prima facie case, that he was qualified for the position or performing his duties satisfactorily.  For the following reasons, Claire's claim

on this ground fails.

Claire's argues that because Vasquez violated a known company policy, Vasquez cannot be found to have been performing his duties satisfactorily. Claire's argument is misplaced, for its reasoning simply does not accord with the Second Circuit's opinion of what the plaintiff must show for the purposes of satisfying the second prong of his prima facie case.

The qualification prong must not be interpreted in such a way as to shift into the plaintiff's prima facie case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision. Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2d Cir. 1978). To show "qualification" sufficiently to shift the burden of providing some explanation for discharge to the employer, the plaintiff "need not show perfect performance or even average performance." Id. Instead, the plaintiff need only make the "minimal showing" that "she possesses the basic skills necessary for performance of [the] job." Owens v. New York City Housing Auth., 934 F.2d 405, 409 (2d Cir. 1991) (internal quotation marks omitted). Furthermore,

> In a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified. An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action. But the crucial point remains the same: the qualification prong, as to which the initial burden lies on plaintiff, cannot be transformed into a requirement that the plaintiff anticipate and disprove an employer's explanation that inadequate ability or performance justified the job action at issue.

Gregory v. Daly, 243 F.3d 687, 696-697 (2d Cir. 2001).

While Vasquez's violation of the after hours policy may potentially serve as a legitimate, non-discriminatory basis for Claire's decision to terminate Vasquez's employment, it does not serve to prove that Vasquez was not "qualified" for the position in the first place.  Pursuant to the Second Circuit's interpretation of "qualified," Vasquez need only establish that he in fact possessed the basic skills necessary for the performance of the job.  While Vasquez's decision to allow a non-employee into the store after hours may prove unwise for the purposes of job security, Rapp's hiring of Vasquez in the first place evidences Claire's belief that Vasquez possessed at least the minimal basic skills necessary to function in his capacity as a store supervisor. Therefore, Vasquez has sufficiently satisfied prong two of his prima facie case, and Claire's motion for summary judgment on this ground is denied.

> **2.  Claire's claim that Vasquez cannot prove the fourth prong of the prima facie case that his discharge occurred under circumstances giving rise to an inference of discrimination**

Claire's claims that Vasquez cannot prove the fourth prong of the prima facie case, that his discharge occurred under circumstances giving rise to an inference of discrimination.  For the reasons that follow, Claire's claim for summary judgment is granted on this ground.

To satisfy the fourth prong of a prima facie case for gender discrimination, the plaintiff must adduce evidence sufficient to show that his firing occurred under circumstances giving rise to an inference of discrimination.  Shumway 118 F.3d at 63. Therefore, it must be determined whether Vasquez has adduced evidence sufficient to

create a genuine issue of fact showing that his firing occurred under circumstances giving rise to an inference of discrimination, one which could reasonably be resolved in his favor by a trier of fact.

Vasquez has failed to adduce such evidence. Vasquez claims that he has satisfied prong four by showing the more favorable treatment of an employee not in his protected group. Vasquez argues that, although Ms. Hubbard claims that Claire's policy of terminating any and all employees who allow non-Claire's personnel in the store after hours is applied to everyone, Patricia Scott, a female Claire's employee in Virginia, was caught on at least one occasion with unauthorized persons in the store during non-business hours and was not summarily terminated. See Plaintiff's Affidavit at ¶ 22.

Circumstances contributing to a permissible inference of discriminatory intent may include showing the more favorable treatment of an employee not in his protected group. Chambers, 43 F.2d at 37. However, to establish the fourth element of a prima facie case through such a showing, Vasquez must also show that he was treated different from "similarly situated" employees not in his protected group. U.S. v. O'Neil, 118 F.3d 65, 64 (2d Cir. 1997). To be "similarly situated," the individuals with whom Vasquez attempts to compare himself must be similarly situated in all material respects. Id. (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992)) (citing Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531 (S.D.N.Y. 1986), aff'd, 814 F.2d 653 (2d Cir. 1987)) (holding that to be deemed "similarly situated", the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in

15

the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it)).

Vasquez's evidentiary showing does not meet this standard.  The individual whom Vasquez claims violated the same policy multiple times without suffering immediate termination, Scott, was not supervised by Rapp, nor Rapp's manager, Mary Ann Porter.  See O'Neil, 118 F.3d at 65 (holding that plaintiff could not meet standard because none of the individuals plaintiff claimed violated the "no fraternization" policy shared the same supervisors as plaintiff).  Therefore, because Vasquez cannot be considered similarly situated with Scott in all material respects, this Scott evidence does not create a permissible inference of discriminatory intent for the purpose of satisfying prong four.  In addition, Vasquez has not submitted admissible evidence to raise an issue of fact concerning Scott.  Further, the basis for Vasquez' argument on this point rests on inadmissible evidence.[3]  Claire's submitted a supplemental Affidavit of Ms. Hubbard (Dkt. No. 32), in which she states Scott, like every other employee, who violated the no visitors after hours rule, was terminated as soon as it learned of the violations.

Vasquez also argues that he was the only male employee ever hired by Rapp, with the exception of a few security guards.  See Rapp's Dep. Tr. at 53-54 and 68-69 (attached to plaintiff's Affidavit as Ex. C), and that he was only one of the only two

---

[3] It is undisputed that Scott violated the policy on "several" occasions.  However, Vasquez incorrectly inferred that Scott had been discovered after her first violation, but not terminated.  The form does not say that and Claire's has offered an Affidavit of its Employee Relations Director that states Scott was fired as soon as Claire's discovered her multiple violations.  Vasquez' unfounded inference does not support a finding that there is a material issue of fact.

identified male supervisors in the company.  Such evidence is not material to Vasquez's claim, let alone sufficient for the purposes of prong four.  The case at bar is a discharge case pursued under the legal theory of individual disparate treatment.  Therefore, these statistics cited by Vasquez are not material to a showing of whether his firing (not hiring) occurred under circumstances giving rise to an inference of discrimination.  As the party opposing summary judgment, Vasquez's facts must be material and of a substantial nature.  See Opals on Ice Lingerie, 320 F.3d at 71.

Vasquez offers evidence, in his Affidavit, about his interactions with a former Claire's store manager and friend of Rapp, Tina Corbo.  He says that, prior to June 14, 2005, he made several complaints to Rapp and Human Resources about being "harassed" by Corbo.  However, nothing in the evidence Vasquez offers concerning Corbo suggests, let alone supports, an inference that this "harassment" by a former employee was based on his gender.  Without such evidence, this harassment is not actionable.

Placing all of this evidence together, Vasquez attempts to weave a tenuous inferential web of discriminatory intent by arguing, in conclusion, that "the immediate termination of Mr. Vasquez, the only male manager ever hired by Rapp and one of the only two identified male supervisors in the company, without letting him explain his version of the events and the failure to immediately terminate Scott, a female employee, gives rise to an inference of discrimination."  See Vasquez's Memo. at 7. For the reasons just discussed, the inference asserted by Vasquez is a gossamer inference unfounded in significant part by admissible evidence, and does not constitute evidence upon which a rational trier of fact could reasonably conclude that Vasquez's

17

firing occurred under circumstances giving rise to an inference of discrimination.

Because Vasquez has not adduced sufficient evidence to satisfy prong four of his prima

facie case, Claire's motion for summary judgment on this ground is granted.

> **D.      Vasquez's Burden to Establish that Claire's Legitimate, Nondiscriminatory Reason For Its Actions Was A Pretext to Mask Unlawful Discrimination**
>
> **1.      Claire's legitimate, nondiscriminatory reason for its actions**

Even if the record were sufficient to meet the <u>de</u> <u>minimus</u>, <u>prima</u> <u>facie</u> standard,

Vasquez has not come forward with admissible evidence on which a jury could

sufficiently establish that the legitimate, nondiscriminatory reason for his firing

articulated by Claire's was a pretext to mask unlawful discrimination.

Once the plaintiff has presented a prima facie case of discrimination, the

defendant has the burden of producing," 'through the introduction of admissible

evidence,' reasons for its action which, if believed by the trier of fact, would support a

finding that unlawful discrimination was not the cause of the employment action."

<u>Chambers</u>, 43 F.3d at 38 (citing <u>St. Mary's Honor Center</u>, 509 U.S. at 510 (quoting

<u>Burdine</u>, 450 U.S. at 254-55)).  When the employer has articulated a nondiscriminatory

reason for its employment action, the presumption of discrimination is rebutted and it

"simply drops out of the picture."  <u>St. Mary's</u>, 509 U.S. at 510-511.

Claire's had repeatedly published to its employees that having anyone other than

a regularly scheduled employee in the store after business hours is a clear violation of

Claire's stated policy and grounds for termination.  <u>See </u>Employee Manual, Ex. A-4 at 8,

16-18.  Vasquez was aware of and understood this policy when he began his

employment as a supervisor with Claire's.  <u>See</u> Pl. Dep. Tr. at 36-39. Claire's strictly

and uniformly enforces this policy.  <u>See</u> Ex. A at ¶¶ 16, 17, 27.  Vasquez admitted to

violating this policy, admitting that he had, indeed, permitted non-employees into the

store after hours.  <u>See</u> Pl. Dep. Tr. at 101-102; 104; 106.  The reason for termination

written on Vasquez's Separation Personnel Action Notice is his having "people in the

store after hours."  <u>See</u> Ex. A-11. Prior to Vasquez's termination, Claire's terminated a

significant number of female employees for the same violation committed by Vasquez.

<u>See</u> Ex. A-8.  Based on this evidence, Claire's has legitimately articulated a

nondiscriminatory business reason for Vasquez's employment termination which, if

believed by the trier of fact, would support a finding that unlawful discrimination was not

the cause of the employment action.

> **2.    Vasquez's burden of proving that Claire's proffered
> justification was a pretext for discrimination**

Since Claire's has proffered a legitimate business reason for the termination of

Vasquez's employment, in order to prevail Vasquez must meet the burden of proving

that Claire's proffered reason is merely a pretext for discrimination.  <u>Shumway,</u>118 F.3d

at 63.  At this stage, Vasquez's burden of showing pretext "merges with the ultimate

burden of persuading the court [the plaintiff] has been the victim of intentional

discrimination."  <u>Burdine</u>, 450 U.S. at 254-56.

In this case, Vasquez has not adduced evidence that could reasonably support

the conclusion that Claire's articulated reason was false, or that the employer's true

reason was discriminatory.  The facts proffered by Vasquez, examined individually and

as a whole, and interpreted in a light favorable to Vasquez, cannot support the

allegation that the proffered explanation for Vasquez's termination is pretextual.  The fact that the non-employee Vasquez allowed to enter the store after hours was the mother of a minor sales associate, who Vasquez claims he let in only out of concerns for her safety, certainly does not render Claire's articulated reason false.  Claire's had repeatedly published to its employees that having anyone other than a regularly scheduled employee in the store after business hours is a clear violation of Claire's stated policy and grounds for termination.  See Employee Manual, Ex. A-4 at 8, 16-18. There are no exceptions to this strict rule in the manual.  Id.  Vasquez was aware of and understood this policy when he began his employment as a supervisor with Claire's. See Pl. Dep. Tr. at 36-39.  Claire's strictly and uniformly enforces this policy.  See Ex. A at ¶¶ 16, 17, 27.  Vasquez admitted to violating this policy, admitting that he had, indeed, permitted non-employees into the store after hours.  See Pl. Dep. Tr. at 101-102; 104; 106.  Furthermore, Vasquez seeks to infer that, because the woman who informed Rapp of Vasquez's violation (Corbo) was a friend of Rapp, and that Vasquez and Corbo engaged in an altercation prior to his termination, Rapp terminated his employment on account of his gender.  It would be speculative to infer gender discrimination from these facts, and such evidence cannot be seen as creating a genuine issue of material fact concerning the proffered justification given by Claire's for Vasquez's employment termination.  Vasquez offers no evidence that supports his claim that he was discriminated against because of his gender.  Vasquez's allegation that Corbo and Rapp conspired against him because he is a male is mere speculation. It is well established that "conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment."  Kulack v. City of New York, 88

F.3d 63, 71 (2d Cir. 1996).

     **E.**     **Vasquez's Retaliation Claim**

     Claire's also moves for summary judgement on Vasquez's claim of unlawful

retaliation (Count Four).  Even though Vasquez has failed to meet his burden and

therefore cannot survive summary judgment with respect to his discrimination claim, he

is still entitled to state a prima facie case for retaliation.  Wimmer v. Suffolk County

Police Dept., 176 F.3d 125, 135 (2d Cir. 1999).  CFEPA retaliation claims under Conn.

Gen. Stat. § 46a-60(a)(4) are analyzed in the same manner as Title VII retaliation

claims.  Brittell, 247 Conn. at 164. Title VII of the Civil Rights Act of 1964, 42 U.S.C.

2000e-3(a) prohibits employers from firing workers in retaliation for their opposing

discriminatory employment practices.  Sumner v. U.S. Postal Service, 899 F.2d 203,

208 (2d Cir. 1990).  Section 704(a) provides in relevant part that:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees or applicants for
> employment . . . because he has opposed any practice made an
> unlawful employment practice by this subchapter, or because he has
> made a charge, testified, assisted, or participated in any manner in
> an investigation, proceeding, or hearing under this subchapter.

Id.  The objective of section 704(a) is to forbid an employer from retaliating against an

employee because of the latter's opposition to an unlawful employment practice.

Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593

(2d Cir. 1988).  Section 703(a) of Title VII defines "unlawful employment practice" as

follows:

> It shall be an unlawful employment practice for an employer to fail or
> refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation,

21

> terms, conditions, or privileges of employment, because of such
> individual's race, color, religion, sex or national origin. . . ."

Id. (quoting 42 U.S.C. § 2000e-(2)(a)(1) (1982)).  The order and allocation of burdens of proof in retaliation cases follow that of the general disparate treatment analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973).  Therefore, to survive summary judgment, Vasquez must first make out a prima facie case of retaliation, demonstrating that (1) he was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003).

Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." Id. at 122 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  "Protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. Cruz v. Coach Stores, 202 F.3d 560, 566 (2d Cir. 2000).  To establish that his activity is protected under Title VII, a plaintiff need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed.  Sumner, 899 F.2d at 209.  See also Manoharan, 842 F.2d at 593 (holding that in order for an employee to prove that he was engaged in a "protected activity," an employee need only have a "good faith reasonable belief that the underlying challenged actions of the employer violated the law.").

22

To determine whether the record may support a jury finding that the employee's belief was reasonable, it is necessary to review the record in light of Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993); see also Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996).  In Harris, the Supreme Court instructed the lower federal courts that the test for the existence of a hostile work environment is determined only by looking at all the circumstances.  510 U.S. at 23.  Moreover, "the subjective sensibilities of an alleged victim may be a relevant consideration in determining whether conduct by a supervisor or a coworker is legally sanctionable."  Id.  To pass the "good faith reasonable[ness]" test of Manoharan, and to determine that "a hostile work environment" is a conclusion that reasonable persons could have reached, an employee must likely offer into evidence more than an isolated comment.  See id. at 1179 (stating that plaintiff likely would not have passed the "good faith and reasonableness" test of Manoharan if the only evidence offered into trial had been coworker's isolated comment).  Furthermore, to satisfy the second prong of the prima facie case, nothing more is necessary than a showing of general employer knowledge that the plaintiff has engaged in a protected activity.  Gordon v. New York City Bd. Of Educ., 232 F.3d 111, 116 (2d Cir. 2000). Opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive protection.  Cruz, 202 F.3d at 566. "Opposition" includes activities such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."  Id. (Quoting Sumner, 899 F.2d at 209).

23

Vasquez alleges that he engaged in protected activity by complaining about Corbo and his working conditions under Rapp prior to his termination.  See Defendant's Local Rule 56(a)(1) Statement at ¶ 37.  He alleges that he was concerned about his safety as a result of the conduct of Corbo and the failure to act by Rapp.  See  Pl. Aff. at ¶ ¶ 10-12.  On or about June 10, 2002, Vasquez reported to the human resource department at Claire's that he and a former Claire's manager, Tina Corbo, were experiencing difficulties with each other.  See Employee Relations Hotline notes (Ex. A-10).  Corbo was not an employee of Claire's at the time of the reported difficulties.  See Id.  Apparently, prior to his termination, Vasquez personally believed that he was subject to discrimination prohibited by Title VII.  See Pl. Dep. Tr. at 108 (Ex. B).[4] However, Vasquez purposefully did not report this perceived violation to the human resources department at Claire's.  See id.  The only complaint made by Vasquez to Claire's was on June 10, in which he complained that Corbo interfered with the operation of the store by socializing with his staff.  See id.  In his complaint, Vasquez never indicated that he was subject to harassment by Corbo on account of his  race, color, religion, sex or national origin.  See Pl. Dep. Tr. at 51 (Ex. B).  In response, Rapp promptly told Corbo to stay out of the Claire's store supervised by Vasquez.  See Rapp. Dep. Tr. at 109-110 (Ex. C).

Vasquez admits that prior to his notification of termination he never communicated to anyone at Claire's that he was a victim of gender discrimination or any other form of harassment statutorily protected under Title VII.  See Pl. Dep. Tr. at

---

[4]  Lettered exhibits (without numbers) are part of Vasquez's Local Rule 56(a)(2) Statement.

149-150.  Neither the assertions made by Vasquez nor anything else found in the record would support a reasonable fact finder's conclusion that Vasquez, prior to his termination, took action to oppose employment discrimination he believed to be statutorily prohibited by Title VII.  While Vasquez may have in fact felt intimidated or insulted by his interaction with Corbo, his complaint in no way suggested opposition to any perceived discrimination.  In fact, Vasquez admits himself that he never communicated to anyone at Claire's that he was a victim of gender discrimination or any other form of harassment statutorily protected under Title VII, prior to his June 14, 2002 employment termination.

Vasquez has not adduced evidence to support a reasonable fact finder's conclusion that his employer was aware of his participation in a protected activity.  In other words, Vasquez's has not demonstrated that he engaged in any conduct or articulated expression, prior to his termination, which could reasonably be construed as being protected by the opposition clause.  Because Vasquez engaged in no "protected activity," he has not established a prima facie case for retaliatory discharge.

IV.    CONCLUSION

For the reasons stated above, Claire's Motion to Strike [Dkt. No. 30] is granted in part and denied in part.  Its Motion for Summary Judgment [Dkt. No. 23] on Count Three and Count Four is GRANTED.

**SO ORDERED**.

Dated at Bridgeport, Connecticut this 28th day of September, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge